# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA and GOVERNMENT OF THE VIRGIN ISLANDS,<br><br>        Plaintiffs,<br><br>        v.<br><br>KAREN BLAKE,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)   CRIM. NO. 2006-0030<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Finch, Senior Judge.

THIS MATTER comes before the Court on Defendant Karen Blake's motion for judgment of acquittal.  Karen Blake was found guilty on Counts 1, 8, 10, 11, 12, 13, and 14 for conspiracy to possess crack cocaine and cocaine powder with intent to distribute,  possession of cocaine powder with intent to distribute, misprision of felony, maintaining a drug-involved premises in violation of federal and Virgin Islands law, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm, respectively.  Karen Blake was charged as both a principal and an aider and abettor in Counts 8, 10, 13, and 14.

**I.    The Evidence**

The Government, in opposition to Karen Blake's motion, has marshaled the evidence that was presented at trial against Karen Blake.  When Karen Blake's house was searched, law enforcement officer found firearms, in a bedroom closet hidden with a ski mask and bullet proof vests.  The officers also found four kilos of cocaine powder in a storage room, along with a

microwave with cocaine residue. From recorded conversations of Karen Blake's brother, Zacheaus Blake, a jury could find that Zacheaus Blake manufactured cocaine base from cocaine powder in Karen Blake's house. Zacheaus Blake would contact Karen Blake to find out when her children and she would be absent from the house so that he could use her house to "cook" the cocaine base. A reasonable juror could also conclude, from the recorded conversations between Karen Blake and Zacheaus Blake and between Zacheaus Blake and others, that although the cocaine powder and firearms did not belong to Karen Blake, she that had told Zacheaus Blake where he could secrete drugs and firearms at her residence.

## II.     Standard of Review

Review of the sufficiency of evidence supporting a conviction is "highly deferential." United States v. Hart, 273 F.3d 363, 371 (3d Cir. 2001) (citation omitted). The Court "must determine whether the evidence submitted at trial, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." Hart, 273 F.3d at 371 (quotation omitted). "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." United States v. Iafelice, 978 F.2d 92, 94 (3d Cir. 1992) (quotation omitted). "Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt," may the Court overturn the jury's verdict. United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1990) (quotation omitted).

"To sustain the jury's verdict, the evidence does not need to be inconsistent with every conclusion save that of guilty." United States v. Gonzalez, 918 F.2d 1129, 1132 (3d Cir. 1990)

(quotation omitted). "There is no requirement . . . that the inference drawn by the jury be the only inference possible or that the government's evidence foreclose every possible innocent explanation." Iafelice, 978 F.2d at 97. All issues of credibility are within the province of the jury. Gonzalez, 918 F.2d at 1132.

The Court views the totality of the circumstances when examining the sufficiency of the evidence. United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984). "The prosecution may fulfill its burden of proving the elements of a crime through circumstantial evidence." Paez v. O'Lone 772 F.2d 1158, 1160 (3d Cir. 1985); see Jackson v. Virginia, 443 U.S. 307, 324-25 (1979) (finding that necessary intent was proven beyond a reasonable doubt through circumstantial evidence); see also Leon, 739 F.2d at 891 (finding that record had sufficient circumstantial evidence for jury to find defendant guilty of aiding and abetting substantive crimes charged). "It is not unusual that the government will not have direct evidence. Knowledge is often proven by circumstances. A case can be built against the defendant grain-by-grain until the scale finally tips; and considering all the facts and drawing upon rational inferences therefrom, a reasonable jury could find beyond a reasonable doubt that the defendant committed the crime for which he is charged." Iafelice, 978 F.2d at 98. "Inferences from established facts are accepted methods of proof when no direct evidence is available so long as there exists a logical and convincing connection between the facts established and the conclusion inferred. The fact that evidence is circumstantial does not make it less probative than direct evidence." McNeill, 887 F.2d at 450 (citation omitted).

"The prosecution must prove every element of a crime charged beyond a reasonable doubt. . . ." Government of the Virgin Islands v. Smith, 949 F.2d 677, 682 (3d Cir. 1991).

"[D]iminishing this burden violates a defendant's right to due process." Id.  On a post-trial motion for acquittal based on the insufficiency of the evidence, the Court must determine whether there is substantial evidence, direct or circumstantial, with logical inferences drawn in the light most favorable to the government, from which a reasonably jury could have found beyond a reasonable doubt that the government proved all the elements of the offense.  See United States v. Salmon, 944 F.2d 1106, 1113 (3d Cir. 1991).

**III.   Analysis**

   A.   Counts 11 and 12 – Maintaining a Drug-Involved Premises

In Counts 11 and 12, Karen Blake is charged with maintaining a drug-involved premises or drug facility in violation of 21 U.S.C. § 856(a)(2) and 19 V.I.C. § 608b, respectively.[1]  The evidence overwhelmingly shows that Zacheaus Blake manufactured cocaine base at Karen Blake's house when she was not at home and also hid cocaine powder in a storage room adjoining Karen Blake's main residence.

Although Karen Blake's position is that she was oblivious to her brother's use of her home to "cook" cocaine base and store cocaine powder, there is substantial evidence from which

---

[1] Section 856(a)(2) makes it unlawful for a person to:

> manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

Section 19 V.I.C. § 608b provides that "any person who knowingly maintains or operates any premises, place or facility used for the manufacture of . . . a narcotic drug in Schedule I or II . . . shall be guilty of a crime."

a reasonable juror could infer that she knew of and acquiesced to the arrangement.  While it may not have been Karen Blake's express purpose that her home be used to unlawfully manufacture controlled substances, it is sufficient that it was Zacheaus Blake's significant purpose to engage in drug-related activities there.  See United States v. Wilson, 503 F.2d 195, 197-98 (2d Cir. 2007).  Thus, the Government has proven that Karen Blake knowingly and intentionally allowed her home to be used for the purpose (albeit Zacheaus Blake's purpose) of manufacturing cocaine base and storing cocaine powder.

      B.      Count 8 – Possession of Cocaine Powder with Intend to Distrbute

The jury found Karen Blake guilty of possession with intent to distribute 500 grams or more of cocaine powder at 146 Barren Spot on October 16, 2005 in violation of 21 U.S.C. § 841(a)(1) as charged in Count 8.  Karen Blake is accused of being an aider and abettor, under 18 U.S.C. § 2, as well as a principal.  "[T]o establish the offense of aiding and abetting, the Government must prove two elements: that the substantive crime has been committed and that the defendant knew of the crime and attempted to facilitate it."  United States v. Frorup, 963 F.2d 41, 43 (3d Cir. 1992).

In a recorded conversation, Zacheaus Blake told Blaine Claxton that he had told Karen Blake that he had hid "something in the room."   When officers searched the storage room on October 17, 2005, that "something" turned out to be four kilos of cocaine powder.  From the recorded conversations of Zacheaus Blake, the jury could find that Zacheaus Blake had concealed the cocaine powder in the storage room.  This evidence is sufficient, therefore, for a jury to determine that Zackeaus Blake possessed the cocaine powder.  From the quantity of cocaine, the

cocaine base retrieved by the authorities from Zacheaus Blake's gas tank, the evidence that Zacheaus Blake was involved in manufacturing cocaine base, the money seized from Zacheaus Blake, of which cocaine powder is an ingredient, the jury could conclude that Zacheaus Blake intended to distribute the cocaine powder.  Thus, substantial evidence showed that Zacheaus Blake committed the substantive crime of possession of 500 grams or more of cocaine powder with intent to distribute.  See United States v. Goldberg, 538 F.3d 280, 287 (3d Cir. 2008) ("[T]he elements of the offense are: (1) knowing or intentional (2) possession (3) with intent to distribute of (4) a controlled substance." (quotation omitted)).

      The evidence showed that Karen Blake knew that Zacheaus Blake was involved in the possession of cocaine powder with intent to distribute.  Zacheaus Blake manufactured cocaine base from cocaine powder at Karen Blake's house.  Although the evidence showed that she was not generally home when Zacheaus Blake performed this activity, the jury could permissibly infer that she knew that her home was being used for this purpose. Thus, she knew that Zacheaus Blake possessed cocaine powder from time to time with intent to distribute it in the form of cocaine base.   Therefore, when Zacheaus Blake stored cocaine powder are her house, she would have known that his intent was to distribute it.  Karen Blake possessed the cocaine powder in that it was at her house and, according to what Zacheaus Blake told Blaine Claxton, she had been told where it was hidden.  She attempted to facilitate Zacheaus Blake's possession with intent to distribute it by providing him with a place to hide the cocaine powder.  Thus, the substantial evidence supports the jury's verdict finding Karen Blake guilty beyond a reasonable doubt of aiding and abetting Zacheaus Blake in his possession of 500 grams or more of cocaine powder with intent to distribute on October 16, 2005.

C.     Counts 10 – Misprision of a Felony

"Concealment of crime has been condemned throughout our history." Roberts v. United States, 445 U.S. 552, 557 (1980). The first Congress of the United States enacted a misprision statute. Id. The elements of misprision of a felony are "(1) the principal committed and completed the felony alleged; (2) the defendant had full knowledge of that fact; (3) the defendant failed to notify authorities; and (4) the defendant took steps to conceal the crime." United States v. Gebbie, 294 F.3d 540, 544 (3d Cir. 2002). "[G]ross indifference to the duty to report known criminal behavior remains a badge of irresponsible citizenship." Roberts, 445 U.S. at 558.

Count 10 charges Karen Blake with aiding and abetting Zacheaus Blake and Kalif Berry in concealing a controlled substance on the same date and at the same place as specified in Count 8, in violation of 14 V.I.C. §§ 13, 11. There is substantial evidence to support each element of the crime of misprision. However, the only controlled substance that the jury learned was concealed on or about October 16, 2005 was the four kilos of cocaine powder found hidden in a room adjacent to Karen Blake's main house. This is the same principal evidence supporting the jury's guilty verdict against Karen Blake on Count 8, for aiding and abetting the possession with intent to distribute 500 grams or more of cocaine powder on October 16, 2006 at 146 Barren Sport.

Courts have held that a person who would otherwise be guilty of misprision, but whose disclosure would be self incriminatory is protected from punishment by the Fifth Amendment. See United States v. Jennings, 603 F.2d 650, 652-653 (7th Cir. 1979); United States v. Kuh, 541 F.2d 672, 677 (7th Cir. 1976); United v. King, 402 F.2d 694, 697 (9th Cir. 1968); see also United States v. Caraballo-Rodriguez, 480 F.3d 62, 72 (1st Cir. 2007) (recognizing that "[w]here

7

the person with knowledge of the underlying crime is also involved in the crime, there are tensions between the Fifth Amendment privilege against self-incrimination and the statutory obligation to provide disclosure"). "The privilege guaranteed by the Fifth Amendment not only extends to statements that would in themselves support a conviction but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the individual for a crime, provided such individual has reasonable cause to fear he might thereby be convicted of that crime." King, 402 F.2d at 697. A conviction cannot stand when "[t]he factual allegations . . . are sufficient to engender in the defendants reasonable cause to believe that disclosing information as to their knowledge of the (underlying 'actual commission of a felony') would place them in the position of furnishing the government with evidence that could lead to their prosecution or conviction." Kuh, 541 F.2d at 677.

The Supreme Court recognizes this exception to the "citizen's duty to raise the hue and cry and report felonies to the authorities:"

> This deeply rooted social obligation is not diminished when the witness to crime is involved in illicit activities himself. Unless his silence is protected by the privilege against self-incrimination, . . . the criminal defendant no less than any other citizen is obliged to assist the authorities.

Roberts, 445 U.S. at 558 (quotation omitted).

In United States v. Jennings, 603 F.2d 650, 652 (7th Cir. 1979), the government argued that because defendants did not participate in a particular drug sale, they would not have incriminated themselves by reporting it. The court reasoned that the Government failed to consider "that defendants reasonably could have believed that their official report of the . . . narcotics sale, and the event surrounding it, could have led to their prosecution and conviction of

8

other, related criminal activities they did participate in." Id.  The disclosure of the narcotics sale "would have provided a link in the chain of evidence which could have led to defendants' prosecution and conviction." Id. at 653.

Karen Blake had reasonable cause to believe that if she had reported to the authorities that there was cocaine powder hidden on her property, she would be prosecuted for aiding and abetting the possession of the cocaine powder with intent to distribute or for other crimes, such as maintaining a drug-involved premises.  Indeed, the jury found her guilty of possession of cocaine powder with intent to distribute, based in part, on the concealed cocaine powder.  To subject Karen Blake to criminal liability for failing to report and concealing crimes, when such disclosure could have led to her own prosecution and conviction violates her Fifth Amendment right against self-incrimination.

Because Karen Blake did not have a duty to notify authorities of the cocaine powder in view of her constitutional privilege against self-incrimination, her conviction of misprision of felon cannot be upheld.  Accordingly, Karen Blake is acquitted of Count 10.

D.   Count 14 – Unauthorized Possession of a Firearm

The jury found Karen Blake guilty of possessing two .40 caliber handguns on October 17, 2005, or aiding and abetting Zacheaus Blake in such possession, in violation of 14 V.I.C. § 2253(a)  On October 17, 2005, law enforcement officers found two loaded guns in a bedroom closet in Karen Blake's house.  The recorded conversations between Zacheaus Blake and his sister Carmen Ferdinand established that the guns belonged to Zacheaus Blake.  Zacheaus Blake held conversations with Carmen Ferdinand and Blaine Claxton from which a jury could infer that

Karen Blake hid the guns in the closet for Zacheaus Blake or allowed him to hide them there. A firearms expert testified that the guns were operable.

The requisite elements of unauthorized possession of a firearm are: (1) knowing possession of a firearm; (2) without a license to possess the firearm; and (3) that the firearm was operable. There was sufficient evidence for the jury to find that Karen Blake possessed the firearms in that she hid them in a bedroom of her house or allowed them to be hidden in her house. Alternatively, the jury could have reasoned that Karen Blake assisted Zacheaus Blake in his unauthorized possession of the firearms by giving him a hiding place for them. Karen Blake did not have a license to possess firearms, and the firearms retrieved from the bedroom were operable. Thus, the Government introduced substantial evidence from which a jury could determine beyond a reasonable doubt that each of the elements of unauthorized possession of a firearm had been met.

E.  Count 13 – Possession of a Firearm in Furtherance of Drug-Trafficking Crime

Karen Blake was found guilty of possessing, or aiding and abetting aiding Zacheaus Blake in possessing, a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). "[M]ere presence of a weapon at the scene of a drug crime, *without more*, is insufficient to prove that the gun was possessed 'in furtherance of' the drug crime." United States v. Hector, 474 F.3d 1150, 1157 (9th Cir. 2007) (quotation omitted). The Government must show a "*specific* 'nexus' between the *particular* firearm and the *particular* drug crime at issue." Id. "[T]he government must present a viable theory as to how the gun furthered the drug possession or distribution." Id. (quotation omitted). In reviewing the evidence connecting the

firearm to the drug crime, the Court looks at the totality of the circumstances.  Id.

There is no evidence to suggest that the firearms were hidden at Karen Blake's house to protect Zacheaus Blake's "cooking" operation or storage of controlled substances.  The evidence does not show that any distribution of controlled substances was performed at or near Karen Blake's house.

Moreover, the firearms were found in a bedroom closet.  They were not within easy reach of Zacheaus Blake or Karen Blake for use during drug-trafficking activities.  "[T]he presence of a firearm in some proximity to collateral products of a drug crime but far from the locus of drug activities does not establish the requisite nexus." Untied State v. Rios, 448 F.3d 1009, 1015 (9th Cir. 2006) ("Whether the requisite nexus is present may be determined by examining, inter alia, the proximity, accessibility, and strategic location of the firearms in relation to the locus of drug activities.").  That the firearms were not strategically located further demonstrates a lack of connection between the firearms and the drug trafficking activities.

Finally, even if the evidence were sufficient to show that Zacheaus Blake possessed the firearms in furtherance of his drug-trafficking activities, there is no evidence to suggest that Karen Blake possessed, or aided Zacheaus Blake in the possession of, the firearm in connecting with the underlying drug crime.  When the gun is not instrumental in the accomplice's decision to participate in the drug offense, the possession of the gun cannot be said to be in furtherance of the drug-trafficking crime.  See United States v. Garth, 188 F.3d 99, 113 (3d Cir. 1999).

Because the nexus between the drug trafficking activities and the possession of the firearm has not been established, the motion for judgment of acquittal is granted as to Count 13.

F.      Count 1 – Conspiracy

"A conspiracy is a partnership in criminal purposes." United States v. Kissel, 218 U.S. 601, 608 (1910).  The elements of conspiracy are: "(1) a shared 'unity of purpose,' (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal." United States v. Bobb, 471 F.3d 491, 494 (3d Cir. 2006) (citation omitted).  These elements can be proven "entirely by circumstantial evidence." United States v. Gibbs, 190 F.3d 188, 197 (3d Cir.1999).

"We punish conspiracy because joint action is, generally, more dangerous than individual action.  What makes the joint action of a group of *n* persons more fearsome than the individual actions of those *n* persons is the division of labor and the mutual psychological support that collaboration affords." United States v. Townsend, 924 F.2d 1385, 1394 (7th Cir. 1991) (quotation omitted).

After reviewing and summarizing the evidence presented at trial on the conspiracy count, the Government makes the following argument to support Karen Blake's conviction of Count 1, charging violation of 21 U.S.C. §§ 841(a)(1) and 846 :

> The pervasiveness of Zacheaus Blake's drug distribution business coupled with his frequent use of Karen's house to cook crack cocaine, Karen's hiding of his guns, and awareness that the police had stopped and searched him at least once, is sufficient to draw a reasonable inference that she knew he was a part of a plan to sell drugs and assisted (joined in) by making her house available for him to cook.  She permitted Zacheaus Blake access to her house even though he once told her he did not want to cook in front of the children because it was wrong.

Opp. to Mot. for Acquittal, at 5.

The Government concedes that the evidence only shows that Karen Blake knew that Zacheaus Blake was a member of a conspiracy and that she aided and abetted that conspiracy by

making her home available to him. Karen Blake is not charged here with aiding and abetting the conspiracy, but in being a co-conspirator herself. The Government has failed to identify substantial circumstantial or direct evidence by which a jury could find that Karen Blake shared a unity of purpose with the conspiracy in which Zacheaus Blake was involved, an intent to achieve a common goal of possession with intent to distribute controlled substances, or an agreement to work together toward that goal. At most, the Government has shown that Karen Blake assisted Zacheaus Blake in committing crimes.

One may aid and abet the commission of a crime without being a conspirator with the principal offender. United States v. Krogstad, 576 F.2d 22, 28 (3d Cir. 1978); United States v. Townsend, 924 F.2d 1385, 1393 (7th Cir. 1991) (noting as examples of non-conspirators "the landlord who rents to an illegal gambling den and the retailer who sells sugar to one he knows will use it to make bootleg whiskey" (citation omitted)). "True, aiding and abetting presupposes the existence of more than one actor, but aiders and abettors are already punished as principals. To justify imposing additional criminal liability, there must be some additional evidence that their actions are intended to bring about the object of the conspiracy." Townsend, 924 F.2d at 1394. That a defendant may derive a benefit from aiding the conspiracy is not sufficient to subject the defendant to additional liability. Id. at 1393.

Karen Blake's knowing and intentional assistance to Zacheaus Blake in providing him with a place to manufacture and store controlled substances and firearms, is not sufficient, in and of itself, to show that Karen Blake ever agreed to work together with Zacheaus Blake or any of Zacheaus Blake's co-conspirator to possess with intent to distribute controlled substances. Therefore, Karen Blake is acquitted of Count 1.

**IV.     Conclusion**

      For the foregoing reasons, the Court grants Karen Blake's motion for judgment of acquittal as to Count 1 – Conspiracy to Possess Cocaine with Intent to Distribute; Count 10 – Misprision of Felony; and Count 13 – Possession of a Firearm in Furtherance of a Drug- Trafficking Crime.  The Court denies Karen Blake's motion for judgment of acquittal as to Count 8 – Possession of Cocaine Powder with Intent to Distribute; Counts 11 and 12 – Maintaining a Drug-Involved Premises; and Count 14 – Unauthorized Possession of a Firearm.

                                                              ENTER:

DATE:     April 24, 2009                    _____/s/_____
                                                             RAYMOND L. FINCH
                                                            SENIOR DISTRICT JUDGE